UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE MATTHEWS,

               Petitioner,

                                            CASE NO. 06-CV-15253
v.                                     HONORABLE GERALD E. ROSEN

KENNETH MCKEE,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

**I.      Introduction**

Michigan prisoner Jermaine Matthews ("Petitioner") has filed a *pro se* petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his

constitutional rights. Petitioner was convicted of unarmed robbery and two counts of second-

degree criminal sexual conduct following a jury trial in the Oakland County Circuit Court in

2003. He was sentenced as a second habitual offender to concurrent terms of 8 years 11 months

to 22 ½ years imprisonment on those convictions in 2005. In his pleadings, Petitioner raises

claims concerning the admission of his police statements and the denial of a mistrial motion

based upon a prior offense reference. For the reasons set forth herein, the Court denies the

petition for writ of habeas corpus.

## II.      Facts and Procedural History

Petitioner's convictions arise from the robbery and assault of Gabrieal June at her home in Oak Park, Michigan on October 9, 2002.  The Michigan Court of Appeals set forth the underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> Defendant's convictions arise out of the sexual assault of a young girl he encountered when she was walking home from school. The victim left school at approximately 11:00 a.m. and walked home where she would be picked up for work at a school sponsored medical training program. On the way home, the victim saw defendant. Defendant caught up to the victim and asked her questions as she walked home. When she arrived at her home, defendant took the victim's arm and followed her into her home. Defendant was wearing a coat, and the victim could not tell if defendant had a weapon. However, she did not invite him into the home, and defendant made the victim feel nervous. Once inside the home, the two went into the basement and played pool. Eventually, defendant undressed the victim and had inappropriate sexual contact with her without her consent. The victim testified that defendant began to undress himself, but took a $100 from her and left the home. The victim called her mother, who worked near the home, who dialed 911. Defendant was carrying a $100 bill when he was apprehended by police a short distance from the home.
>
> Defendant was taken to the police station where he was interviewed on three different occasions. The interviews were videotaped. Defendant asserted that he requested counsel prior to the interviews and requested counsel during the interviews, but police ignored his requests. The police and the prosecution asserted that a clear and unequivocal assertion of the right to counsel did not occur. Following a *Walker* hearing, the trial court denied defendant's motion to suppress his statements....

*People v. Matthews*, No. 252034, 2005 WL 1249266, *1 (Mich. Ct. App. May 26, 2005) (unpublished) (footnote citation omitted).  Petitioner's police statements were admitted into evidence at trial.

At the close of trial, the jury convicted Petitioner of one count of unarmed robbery and two counts of second-degree criminal sexual conduct.  The trial court subsequently sentenced

him as a second habitual offender to concurrent terms of 13 years to 22 ½ years imprisonment.

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising several issues, including those raised in the present petition. The Michigan Court of Appeals affirmed his convictions, but remanded for re-sentencing. *Id*. Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Matthews*, 474 Mich. 957, 706 N.W.2d 742 (2005). On remand, the trial court re-sentenced Petitioner to serve concurrent terms of 8 years 11 months to 22 ½ years imprisonment.

Petitioner thereafter submitted his federal habeas petition raising the following claims as grounds for relief:

I.  Oak Park Police Officers interrogated Petitioner and ignored his requests for counsel. The trial court erred where it admitted Petitioner's statements into evidence. The trial court denied Petitioner his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. The convictions on all counts should be reversed and the matter remanded for a new trial.

II. The trial court ordered that the prosecutor could not refer to Petitioner's prior offense. The trial court specifically ruled that the prosecutor must redact Petitioner's statement that "I've been through this before" from the videotape of the interrogation. The prosecutor failed to redact this statement and it was played to the jury. Petitioner moved for a mistrial. The trial court abused its discretion where it denied the motion for a mistrial.

Respondent has filed an answer to the petition asserting that it should be denied for lack of merit.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., governs this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA

3

provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable
>          application of, clearly established Federal law, as determined by the
>          Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination
>          of the facts in light of the evidence presented in the State court
>          proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

4

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.    Analysis**

   A.    Admission of Police Statements

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting his statements to police.  Specifically, Petitioner asserts that his statements were obtained in violation of his right to counsel and should have been suppressed at trial. Respondent contends that this claim lacks merit.

As noted, the state trial court conducted an evidentiary hearing on this issue before trial.

5

At that hearing, Sergeant Richard Frank and Petitioner testified about their conversations and

the parties stipulated to the admission Petitioner's taped statements.  The transcripts of those

statements reveal that Sergeant Frank spoke with Petitioner three times.  During the first

interview, Petitioner made the following references to an attorney:

Frank:          And this is really your only chance to even tell your side of the
                story.  If you don't want to talk to us right now, if you decide that
                you don't want to talk to us, we're not gonna know what it is.
                Right?  We're just gonna have to go on what she told me.  You
                see what I'm saying?  I mean I think that's a little – I mean if
                there's something you want to tell us about this, I guess this is
                probably the time you need to do it, because if you say that you
                don't want to talk to us, um, I'm never gonna go off of what she
                tells me.  I'm gonna sent up this packet up to the prosecutor and
                let them make a determination of what she tells.  All right?  Kind
                of unfair, don't you thing?  Or it doesn't really –

Matthews:       I get a chance to speak to a lawyer –

Frank:          Do you?  Sure.  If that's what you want, but if you say that to me
                now, you and  I aren't gonna talk.  I'm not gonna hear what your
                side of the story is.

Matthews:       One of the officers just told me that I'll be able to talk to you and a
                lawyer, I know –

Frank:          If you ask –

Matthews:        I know –

Frank:           I'm trying to explain –

Matthews:        I know how important it is to talk to you.

Frank:           All right.

Matthews:        I understand that.

Frank:           All right.

Matthews:       And I don't want to sound like I'm being facetious or anything like that or

giving you a hard time.

Frank:          No, not at all.

Matthews:       I want you to understand that I want – But the last time I went through this, and I gave the detective a statement, he said that it's best to talk to a lawyer.  It's best to have a lawyer present, and I'm pretty sure you'll tell me the same thing.

Frank:          Well, I'm gonna give you your rights.  All right?  And you're gonna have to make that decision for you.  If you tell me that you want a lawyer, you want to talk to a lawyer.  All right?  You and I can't talk.  All right?  And you and I aren't gonna talk.  All right?  And the only way that would be reinitiated is if you tell your lawyer that you want to talk to me and that's gonna be in the presence of your lawyer at that time.  An you – And that probably won't happen.  I can tell you right now that won't happen....

Interview Tr., pp. 8-9.  Sergeant Frank then gave Petitioner his *Miranda* rights, and Petitioner

indicated that he understood those rights and signed a waiver form.

During the course of the interview, Petitioner acknowledged that he went to the victim's

home where they watched television and played pool.  He initially denied touching her, but then

admitted hugging her, kissing her neck, caressing her back, behind, thighs, and breasts through

her clothes.  He claimed that those acts were consensual and denied penetrating the victim or

committing any acts that he considered rape.  *Id*. at pp. 18-21, 24.

Later in the interview, the detectives asked Petitioner if his girlfriend could confirm his

story and if he had spoken to her since his arrest.  Petitioner replied:

No.  I didn't have the chance to use the phone at all.  I was waiting to speak to, ah, they said that I'd would [sic] have to speak to y'all and a lawyer but the only person that I haven't spoken to was a lawyer.  But I'm assuming that I won't be able to talk to that person 'til tomorrow.

*Id*. at 42.  There was also some discussion about Petitioner taking a polygraph, and Petitioner

asked: "So, I'll talk to a lawyer before I take this polygraph test right?"  *Id*. at 92.  Sergeant

7

Frank replied that Petitioner would talk to a lawyer if he was formally charged and concluded the interview. *Id.*

At the start of the second interview, Petitioner was again advised of his *Miranda* rights and waived those rights. During the conversation with Sergeant Frank, Petitioner denied taking advantage of the victim and claimed that the $100 bill at issue was his own money. When Sergeant Frank continued to question his story, Petitioner asked for a lawyer, stating: "If you feel that way, man, we're not talking about anything. I want to talk to a lawyer." *Id.* at p. 103. Sergeant Frank then terminated the interview.

Petitioner subsequently asked to see Sergeant Frank and re-initiated their conversation. During this third interview, the following exchange occurred:

| | |
|---|---|
| Frank: | All right? You need to understand also that *Miranda* which we've explained twice to you, is still under effect. You're under *Miranda* still. By [sic] anything you say can and will be used against you. All right? And all those other things that we've talked about. The right to remain silent. The right to have an attorney. Those are still in effect. |
| Matthews: | Fine, Well you said, you said that you're [sic] investigation was over basically, right? So the next step was for me to go to court and I needed a lawyer from that point on anyway, right? |
| Frank: | Well, are you asking me the, the legal times that an attorney gets presented to you? |
| Mathews: | Right. |
| Frank: | Well, that, that'll be after the arraignment. You'll be, once we get the warrant down there, you get, you'll be arraigned and they'll ask you if you can afford an attorney of your own. Okay? And if you can't then they'll appoint an attorney to you at that point. |

*Id.* at pp. 103-04.

Later during the same interview the following exchange occurred:

8

| Frank: | You've sat there long enough to formulate another lie, is what you're gonna tell me.  But go ahead, I'll listen to it. |
|---|---|
| Matthews: | No sir.  I'm saying I wanted to know when I can talk to a lawyer.  You told that, and I wanted to know, if a lawyer could be right here.  That's the only thing that I'm the only reason why I'm not writing anything down and withholding information because I wanted to see a lawyer. |
| Frank: | You won't see a lawyer until after your arraignment. |
| Matthews: | Right.  Can I call my lawyer? |
| Frank: | Because I have an ongoing investigation and where [sic] going to limit your conversations to anybody right now, All right? |

*Id.* at p. 107.  The following exchange also occurred:

| Frank: | I telling [sic] – I don't need to tell you anything about this case.  I don't need to talk to you.  All right?  In fact, you asked for a lawyer.  I shouldn't be talking to you.  The only reason why I'm in here is because you wanted too [sic]; you initiated it.  All right? |
|---|---|
| Matthews: | Right. |

*Id.* at p. 115.

When Petitioner next referenced a lawyer, Sergeant Frank told him that the interview was over, but Petitioner continued speaking with him:

| Frank: | See now.  What were ya, what were ya gonna pay her to do?  Hey, if you're gonna say that you might as well finish it. |
|---|---|
| Matthews: | For what ever I could.  I just want a lawyer, sir.  I don't want to look like – |
| Frank: | Now we're done.  You just asked for a lawyer. |
| Matthews: | I'm just saying that's why I was asking because the cop told me that I could talk to a lawyer and you here.  That's what they told me. |
| Frank: | Once you're done and arraigned and if you have a lawyer and you want to come back and talk to me, you can. |

9

Matthews:     He said that I could talk to you with an attorney.

Frank:        No.

Matthews:     And that's (unintelligible).

Frank:        Jermaine, you just asked me for an attorney.  We're done.  You just asked for an attorney.  All right?

Matthews:     But do you understand what I'm telling you sir?  I didn't –

Frank:        I don't understand anything that you're telling me because I think you're lying to me.  All right?  And you just asked for an attorney and we're done.  All right?

Matthews:     Officer, I said I wanted, that's why I wanted to talk to an attorney.

Frank:        So you're not asking for an attorney right now?

Matthews:     I'm asking – I'm telling you that's why I wanted to talk to an attorney so –

Frank:        That's your right, but I'll tell you what: you don't get both right now.  You talk to me or you talk to an attorney.  I'm not (unintelligible) I just don't want you lying to me anymore.  I don't want –

Matthews:     There's nothing that I 've lied to you about (unintelligible)

                                    * * *

Frank:        We're not – We're not done.  We've got to address the issue first.  You asked for an attorney, didn't you or didn't you?

Matthews:     Officer, I'm just trying to talk to you to get, explain to you –

Frank:        Jermaine, did you ask me for an attorney right now?

Matthews:     In the beginning I asked you for an attorney.

Frank:        Do you want an attorney right now?

Matthews:     I can get one right now?

Frank:        Jermaine, I've explained to you.  You don't get it both ways.

                                    10

|            | Either you talk to me or you go back to your cell – |
|------------|-----------------------------------------------------|
| Mathews:   | I want to talk to you. |
| Frank:     | So do you want an attorney right now? |
| Matthews:  | No. |
| Frank:     | Okay. |
| Matthews:  | I want to talk to you.  If I can't talk to you right now with an attorney, I understand that, but you have to understand that an officer told me that. |
| Frank:     | I don't know who that officer was, but I explained to you the *Miranda* rights and what they were and if you want an attorney, you and I, we're not gonna talk.  I explained that to you.  Didn't I?  If you ask for an attorney, you and I couldn't talk. |
| Matthews:  | Like I said, someone told me that – |
| Frank:     | Jermaine, the question was, did I not explain that to you? |
| Matthews:  | Now that you told me, that I told you that, I have to wait on a lawyer anyway because you won't let me make a phone call.  I felt like I had a right to make a phone call, but you said – |
| Frank:     | It's a privilege not a right and because this is an ongoing investigation – |
| Matthews:  | I can't make – |
| Frank:     | You can't make a phone call.  All right? |
| Matthews:  | I can't see a lawyer until I make a phone call or until I'm arraigned. |
| Frank:     | Jermaine, you're wasting my time.  All right? |
| Matthews:  | I said that I want to see a lawyer I should I have gone on and talked to you. |
| Frank:     | Then, then if you're gonna talk to me talk to me about the incident and what happened, really happened.  All right? |

11

Matthews:      I'm telling –

Frank:          No, you're not.

Matthews:      I'm telling you what happened, officer.

*Id.* at pp. 117-21.

Upon further questioning, Petitioner admitted kissing the victim's breasts, but indicated that such conduct was welcome and that he had offered to pay the victim for the privilege of doing so. Petitioner continued to deny that he threatened the victim or that he took the $100 bill from her. *Id*. at pp. 127-32.

The Fifth Amendment to the United States Constitution protects an accused from compulsory self-incrimination. The prohibition against compelled self-incrimination requires that a custodial interrogation be preceded by advice that the suspect has the right to an attorney and the right to remain silent. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966); *see also Dickerson v. United States*, 530 U.S. 428, 432 (2000) ("*Miranda* and its progeny...govern the admissibility of statements made during custodial interrogation in both state and federal courts."). If the suspect invokes his right to counsel, "the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474. When a suspect has invoked the right to counsel during custodial interrogation, the suspect may not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

In *Davis v. United States*, 512 U.S. 452, 459 (1994), the United States Supreme Court clarified that the request for counsel must be express and unambiguous in order to require the

cessation of questioning.  *See also United States v. Dupree*, 323 F.3d 480, 486 (6th Cir. 2003).

If a suspect's reference to counsel is ambiguous or equivocal, the police have no obligation to

stop questioning him.  *Davis*, 512 U.S. at 459.  A suspect must sufficiently articulate his desire

for counsel so that a reasonable police officer under the circumstances would understand the

statement to be a request for an attorney.  *Id*.

> The Michigan Court of Appeals concluded that the trial court properly denied

Petitioner's motion to suppress his custodial statements.  The court explained:

> Defendant first argues that he was denied his Fifth Amendment right to counsel
> during his custodial interrogation, and therefore, the trial court erred in refusing
> to suppress his statements to the police. We disagree. Although the trial court's
> ruling on a motion to suppress evidence is reviewed de novo, we will not disturb
> the trial court's factual findings unless they are clearly erroneous. *People v.
> Kowalski*, 230 Mich App 464, 471-472; 584 NW2d 613 (1998).
>
> Based on the Fifth Amendment of the United States Constitution, a suspect
> subject to custodial interrogation has the right to consult with an attorney and to
> have counsel present during questioning. *Davis v. United States*, 512 US 452,
> 457; 114 S Ct 2350; 129 L Ed 2d 362 (1994). The police must explain the
> *Miranda* FN3 rights to the suspect before questioning begins. *Id.* If the suspect
> subsequently waives his right to counsel, the police are free to question him. If,
> however, a suspect clearly and unequivocally requests counsel at any time during
> the interview, he is not subject to further questioning unless a lawyer has been
> made available or the suspect himself reinitiates conversation. *Id.* at 458-459.
>
> FN3. *Miranda v. Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).
>
> Review of defendant's brief on appeal reveals that defendant removes various
> requests for counsel from the transcript and cites to the statements in isolation.
> Moreover, we do not have the benefit of the videotapes of the interviews because
> they were not provided on appeal. However, based on our review of the
> statements FN4 of requests for counsel in context, we cannot conclude that the
> trial court's factual conclusions were clearly erroneous, *Kowalski, supra*, and
> therefore, the trial court did not err in denying the motion to suppress.
>
> FN4. The prosecutor provided the transcripts of the statements as an appendix to
> the brief on appeal, and the transcripts are not contained in the lower court
> record. However, defendant does not dispute the accuracy of the prosecutor's

13

appendix. Consequently, we utilized the transcripts to complete our review.

Defendant was interviewed by Sergeant Frank three times. Each time, Frank informed defendant of his right to counsel. A review of the record demonstrates that, during the first interview, defendant did not make a clear and unequivocal request for counsel. Defendant did, however, make such a request during the second interview, and the interrogation ended immediately. During the third interview, which defendant initiated, defendant discussed obtaining counsel, but did not make a clear and unequivocal request. Though the record indicates that Frank sought to manipulate defendant during the interrogation and was not entirely forthcoming in response to some of defendant's questions, it is clear that defendant knew how to make a clear and unequivocal request for counsel and chose not to do so.

It is also clear that defendant wanted to continue talking to Frank to convince him of his innocence. Defendant indicated that he "wanted to talk to [police] and see exactly what's going on." Additionally, defendant wanted to know what conduct could be characterized as criminal sexual conduct because he opined that he merely "hugged" the victim, and therefore, there was no rape. Defendant wanted to speak to police and his lawyer at the same time. However, police advised him of his rights and indicated that his lawyer would not allow an interview to occur and further stated that police could not make the decision for defendant. With this knowledge, defendant did not invoke a clear and unequivocal request for counsel or exercise his right to remain silent. FN5 *See People v. Adams*, 245 Mich App 226, 239; 627 NW2d 623 (2001) (Defendant's statement of "Can I talk to [a lawyer] right now" was not clear and unequivocal under the circumstances where, in context, defendant indicated that he was thinking and making inquiry about the process.). It appeared that defendant wanted to make statements because he believed that he could convince police of his innocence because they understood how women acted. Consequently, the trial court did not err in denying the motion to suppress the statements.FN6

FN5. Indeed, the crux of the interviews as a whole indicate that defendant believed that any acts that occurred could not be considered a crime and thought the male police officers would identify with him. Defendant told police that he had "luck" with women because he had appeared on the Jenny Jones television show and appeared in magazines with his cousin, Jalen Rose. Defendant also told police that, "I mean, me and you, we know what it takes for a man to actually to take this from a woman." On the record as a whole, it appeared that defendant did not provide a clear and unequivocal assertion of the right to counsel because he believed he could talk his way out of the situation.

FN6. Defendant contends that he made a request for counsel prior to the commencement of the first statement that was not recorded on videotape. The

14

trial court did not make a finding that this assertion was credible.
*See Matthews*, 2005 WL 1249266 at *2-3.

Having reviewed the record, this Court finds that the Michigan Court of Appeals'

determination is neither contrary to Supreme Court precedent nor an unreasonable application

of the law or the facts.  The record reveals that Petitioner made his statements at the police

station after being advised of his constitutional rights.  Petitioner has not shown that his police

statements were taken in violation of his right to counsel.

As to the first interview, the transcript of the exchange between Petitioner and Sergeant

Frank reveals that while Petitioner made references to speaking with a lawyer, he did not make

an unequivocal request for counsel during that interview.  Petitioner's comments about the

possibility of speaking to a lawyer and the wisdom of doing so, such as "I get a chance to speak

to a lawyer," or "One of the officers just told me that I'll be able to talk to you and a lawyer," or

"It's best to have a lawyer present," were not clear and unambiguous requests for counsel.  *See*

*Davis*, 512 U.S. at 461-62 (suspect's statement that "maybe I should talk to a lawyer" was

ambiguous and not a clear request for counsel); *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th

Cir. 1994) (statement that "it would be nice" to have an attorney was not a clear request for

counsel); *see also Clark v. Murphy*, 331 F.3d 1062, 1071-72 (9th Cir. 2003) (state court

determination that statements "I think I would like to talk to a lawyer" and "should I be telling

you, or should I talk to an attorney" were ambiguous was not unreasonable); *Burket v.*

*Angelone*, 208 F.3d 172, 198 (4th Cir. 2000) ("I think I need a lawyer" was not a clear request

for counsel); *Diaz v. Senkowski*, 76 F.3d 61, 63-65 (2d Cir. 1996) ("I think I want a lawyer" and

"Do you think I need a lawyer?" were not clear requests for counsel); *but cf. Abela v. Martin*,

15

380 F.3d 915, 926 (6th Cir. 2004) (statement "maybe I should talk to an attorney by the name of William Evans" was an unequivocal request for counsel where the suspect specifically named his attorney and gave the police officer the attorney's business card).

Petitioner's remarks about meeting with a lawyer in the future and having one present at a polygraph examination were also not clear and unambiguous requests for counsel. *See United States v. Doe*, 170 F.3d 1162, 1166 (9th Cir. 1999) ("What time will I see a lawyer" was not a clear request); *United States v. Uribe-Galindo*, 990 F.2d 522, 524 (10th Cir. 1993) (suspect did not invoke right to counsel by inquiring "whether he could have an attorney later on if he asked for one"). Because Petitioner did not make clear and unequivocal request for counsel during the first interview, the state court did not err in admitting those statements at trial.

As to the second interview, the transcript shows that Petitioner made an explicit request to speak with an attorney by stating, "I want to talk to a lawyer." Sergeant Frank then terminated the interview. Such conduct was in keeping with Supreme Court precedent, *see, e.g., Edwards*, 451 U.S. at 484-85, and there is no question that Petitioner invoked his right to counsel and that the police honored his request. Petitioner has not shown a violation of his constitutional rights as to this interview, nor did the state court err in admitting any statements that he made before requesting counsel.

The third interview occurred only after Petitioner asked to speak with Sergeant Frank and he was advised that his *Miranda* rights were still in effect. Because Petitioner re-initiated the conversation with police and indicated his desire to speak with police, it was appropriate for Sergeant Frank to resume questioning him about the incident in the absence of counsel. *Id*; *see also Minnick v. Mississippi*, 498 U.S. 146, 156 (1990). During the third interview, Petitioner

16

made several references to an attorney.  His questions about when he might need or be able to contact a lawyer, such as "So the next step was for me to go to court and I needed a lawyer from that point on anyway, right?" or "I wanted to know when I can talk to a lawyer" or "Can I call my lawyer?" were not clear and unequivocal requests for counsel.  *See* discussion *supra*; *see also Ford v. Hall*, 546 F.3d 1326, 1339 (11th Cir. 2008) (suspect's question "Can I call my attorney?" was not a clear invocation of the right to counsel).

In contrast, Petitioner's statement, "I just want a lawyer, sir," can be seen as a clear request for counsel.  *See Kyger v. Carlton*, 146 F.3d 374, 376 (6th Cir. 1998) ("I'd just as soon have an attorney" was an unambiguous request for counsel); *see also United States v. Lee*, 413 F.3d 622, 626 (7th Cir. 2005) (citing *Lord v. Duckworth*, 29 F.3d 1216, 1221 (7th Cir. 1994), and listing examples of unequivocal requests for counsel).  In fact, Sergeant Frank recognized as much and responded, "Now, we're done.  You just asked for a lawyer."  Petitioner, however, then continued to ask whether he could speak with Sergeant Frank and an attorney.  In response, Sergeant Frank indicated that Petitioner could either speak to an attorney or speak to him, and went on to clarify whether Petitioner wanted to consult with counsel or to continue speaking with him.  Petitioner ultimately said that he wanted to talk to Sergeant Frank and did not want an attorney, and the interview continued.

Viewed in isolation, Petitioner's statement "I just want a lawyer," would ordinarily be an unambiguous request for counsel which would preclude any further police interrogation, even clarifying questions about the desire for counsel, until a lawyer was made available.  *See Davis*, 512 U.S. at 458 (citing precedent indicating that such a prophylactic rule is designed to prevent police from badgering a defendant into waiving his previously asserted rights).  As

17

discussed *supra*, however, there is a caveat to this rule – a suspect may be further questioned by police if he himself reinitiates conversation.  *Id.* (citing *Edwards*, 451 U.S. at 484-85).  That is what occurred in this case.

Following his request for a lawyer, Petitioner subsequently made unprompted, volunteered statements indicating a desire to keep speaking with Sergeant Frank – thus reinitiating their conversation and also creating an ambiguity about his wishes.  While Petitioner then made references to counsel, such as "He said that I could talk to you with an attorney," and "that's why I wanted to talk to an attorney," and "I can get one right now?" and "I have to wait on a lawyer anyway because you won't let me make a phone call" during their exchange, those statements were ambiguous and not clear invocations of the right to counsel.  Consequently, it was appropriate for Sergeant Frank to ask clarifying questions about whether Petitioner wanted to consult with counsel or to continue the interview.  *See Davis*, 512 U.S. at 461 (characterizing interrogating officer's clarification about whether suspect wanted counsel as "good police practice" where references to counsel could be seen as ambiguous); *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000) (state court reasonably determined that question "Should ...we're going to have to get a lawyer then and should his mother be notified?" was equivocal and police properly inquired into desire for counsel); *United States v. Allen*, 59 F.3d 171, 1995 WL 390311, *2-4 (6th Cir. 1995) (suspect's statement, "I don't know if I should really be talking now, I mean without a lawyer and everything," was ambiguous and officer properly clarified whether he wished to proceed without counsel); *see also Ford, supra*, 546 F.3d at 1339 (finding that question about calling an attorney was not a clear invocation of the right to counsel and noting that, even if it were, the defendant "himself" initiated further conversation with police).

18

As explained by another federal court in resolving a habeas case involving a similar

factual scenario:

> A defendant who has previously invoked counsel unambiguously could, as Nom did here, volunteer a statement in the presence of a police officer subsequent to that invocation that creates an ambiguity in the mind of a reasonable police officer about whether the defendant is now waiving his right to counsel. In the presence of such an ambiguous waiver of a prior request for counsel, the observation of the Supreme Court in *Davis* seems apt: "When a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officer to clarify whether or not he actually wants an attorney." *Id.* at 461....

*Nom v. Spencer*, 337 F.3d 112, 118 (1st Cir. 2003); *see also Abela*, 380 F.3d at 926 (finding it

appropriate for a reviewing court to look to the surrounding circumstances to evaluate the

clarity of a suspect's request for counsel); *cf. Smith v. Illinois*, 469 U.S. 91, 97 (1984)

(accused's post-request responses to further interrogation cannot be used to cast doubt on the

clarity of his initial, unambiguous request for counsel). While Sergeant Frank was somewhat

evasive in responding to Petitioner's questions, he did not badger Petitioner into waiving his

right to counsel. It is also significant that Sergeant Frank did not further question Petitioner

about the incident itself until Petitioner had confirmed that he did not want an attorney and

wanted to proceed with the interview. Such action was in keeping with good police practice as

acknowledged by the Supreme Court in *Davis, supra*.

The Court acknowledges that the foregoing analysis differs from the Michigan Court of

Appeals' decision which looked to the totality of the circumstances and found that Petitioner

did not clearly invoke his right to counsel during the third interview. Namely, this Court has

found that Petitioner invoked his right to counsel during the third interview when he stated, "I

just want a lawyer, sir." At that point, Sergeant Frank ceased his interrogation. Petitioner then

19

reinitiated their conversation, which created an ambiguity as to whether he wished to speak with Sergeant Frank or with an attorney. Sergeant Frank responded by asking questions, not to interrogate Petitioner about the incident, but to clarify whether he wanted to proceed with the interview or to stop and consult with counsel. Petitioner ultimately indicated that he did not want an attorney and wanted to keep speaking with Sergeant Frank. Despite this alternate analysis, the Court nonetheless finds that the state court's result that Petitioner's constitutional rights were not violated during the third interview is neither contrary to nor an unreasonable application of Supreme Court precedent. The state court did not err in admitting the statements that Petitioner made during his third interview.

Moreover, even assuming that Petitioner's third interview statements were taken in violation of his constitutional rights, he is still not entitled to federal habeas relief. The United States Supreme Court has held that harmless error analysis applies to the admission of confessions obtained in violation of a suspect's Sixth Amendment right to counsel. *See Milton v. Wainwright*, 407 U.S. 371, 372 (1972); *see also Lee*, 413 F.3d at 627 (citing cases). For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

In this case, any error in admitting statements made during Petitioner's third interview (following the alleged invocation of his right to counsel) was harmless. The victim's testimony, combined with the circumstances of Petitioner's arrest (*i.e.*, fitting the perpetrator's description, being found in the vicinity of the victim's home shortly after the incident, and possessing a $100 bill), provided sufficient evidence to establish the elements of two counts of second-

20

degree criminal sexual conduct and one count of unarmed robbery beyond a reasonable doubt.

Additionally, the statements made by Petitioner during the third interview were not particularly

incriminating given that he continued to contend that his contact with the victim was consensual

and that the $100 bill was his own money.  Furthermore, while Petitioner admitted kissing the

victim's breasts during the third interview, he had already admitted accompanying the victim to

her home, kissing and hugging her, and touching her buttocks and breasts in his prior

interviews.  Given these particular circumstances, any error in admitting Petitioner's statements

from the third interview did not have a substantial or injurious effect or influence on the verdict.

Habeas relief is not warranted on this claim.

     C.     <u>Denial of Mistrial Motion/Other Acts Reference</u>

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in

denying his motion for a mistrial where the prosecution failed to comply with the court's order

to redact Petitioner's custodial statement, "I've been through this before," from the tape played

to the jury during trial.  Respondent contends that this claim lacks merit.

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a

showing of manifest necessity.  *See Walls v. Konteh*, 490 F.3d 432, 436 (6th Cir. 2007);

*Clemmons v. Sowders*, 34 F.3d 352, 354-55 (6th Cir. 1994).  The Michigan Court of Appeals

denied relief on this claim, stating as follows:

> Defendant next argues that he was denied a fair and impartial trial by the
> prosecutor's failure to redact a statement from defendant's videotaped
> interrogation. Before trial, the trial court had ordered the prosecutor to redact the
> statement, and he inadvertently failed to do so. Defendant moved for a mistrial
> and his motion was denied. We review a trial court's ruling on a request for a
> mistrial for an abuse of discretion. *People v. Wells*, 238 Mich App 383, 390; 605
> NW2d 374 (1999).

A mistrial shall be declared only for an irregularity that prejudices the defendant and deprives him of a fair trial. *People v. Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999). Defendant was not denied a fair trial. The statement was a miniscule part of a 2 ½ hour long, heavily redacted videotape. Neither the trial court nor the prosecutor heard the statement while watching the videotape at trial. Thus, it is unlikely that members of the jury heard the statement. Furthermore, the remark was redacted out of the transcript of the interview that was admitted as an exhibit and was redacted out of the videotape before the jury began its deliberations.FN7 Therefore, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

FN7. We also note that the redacted first interview contains the statement that defendant "just left this jail cell two or three weeks ago" based on outstanding tickets. It is equally as plausible that any reference to being through "this before" could be construed as referring to the time spent in jail for outstanding tickets.

*See Matthews*, 2005 WL 1249266 at *3.

This determination is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner relies upon state law to support this argument, he fails to state a claim for habeas relief. It is well-settled that habeas relief may not be granted for alleged violations of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Second, an evidentiary ruling violates due process and warrants habeas relief only when it is "so egregious that it results in a denial of fundamental fairness." *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994). As to the admission of other acts evidence, the Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[1] Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due

---

[1]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329

F.3d 496, 512 (6th Cir. 2003).  Consequently, there is no Supreme Court precedent that the state

court decision could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  *Id*. at 513; *see also*

*Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).

      Furthermore, Petitioner has not established that the prosecution's error in failing to

redact the reference from the tape played at trial rendered his trial fundamentally unfair.  *See,*

*e.g., Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (habeas relief may be warranted

when the prosecutor's conduct "so infected the trial with unfairness as to make the resulting

conviction a denial of due process"); *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002)

(prosecutor's conduct must be improper and flagrant to violate due process).  In this case, the

redaction error on the tape played at trial was inadvertent; the disputed statement was brief and

referred to an unidentified prior police contact; and the reference was redacted from the

transcript and the tape given to the jury for deliberations.  The trial court also offered to give a

curative instruction (which defense counsel refused).  There was also significant evidence of

Petitioner's guilt of the charged offenses given the victim's testimony, the circumstances of his

arrest, and Petitioner's own admissions.  Consequently, Petitioner has failed to establish a

violation of his federal constitutional rights.  Habeas relief is not warranted on this claim.

**V.**      **Conclusion**

      Having reviewed the record, the Court concludes that the state courts' denial of relief is

neither contrary to Supreme Court precedent nor an unreasonable application of federal law or

the facts.  Petitioner is thus not entitled to habeas relief on the claims contained in his petition.

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  January 22, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 22, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager